# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENN M. HAFFEMAN, and BEVERLY A. HAFFEMAN,<br><br>                    Plaintiffs,<br>v.<br>WELLS FARGO BANK, N.A., et al.,<br><br>                    Defendants. | Case No. 12cv00046 BTM (WVG)<br><br>**ORDER DENYING REQUEST FOR INJUNCTION AGAINST FORECLOSURE SALE** |

On February 28, 2012, Plaintiffs Lenn M. Haffeman and Beverly A. Haffeman filed an ex parte application seeking a temporary restraining order enjoining a foreclosure sale of the property located at 7103 Via Del Charro, Rancho Santa Fe, CA 92067 (the "Property"), scheduled for March 12, 2012. For the reasons set forth herein, the Court DENIES Plaintiffs' ex parte application.

## I. BACKGROUND

On or about July 25, 2006, Plaintiffs executed a deed of trust in favor of Defendant Wells Fargo (the "Deed of Trust"), encumbering the Property as security for a loan made by Wells Fargo to Plaintiffs in the amount of $2,625,000 (the "Loan"). The trustee named in the Deed of Trust is Fidelity National Insurance Company ("Fidelity"). The beneficiary under the

Deed of Trust is Wells Fargo. Plaintiffs made all payments on the loan through approximately August 2010.

On August 18, 2011, a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") was recorded against the Property. On November 22, 2011, Defendants caused to be recorded a Notice of Trustee's Sale ("Notice of Sale"), scheduling a nonjudicial foreclosure sale of the Property for December 14, 2011.

On December 12, 2011, Plaintiffs filed a complaint in the Superior Court of California, San Diego County, alleging procedural defects in the foreclosure proceedings and seeking an injunction against the December 14, 2011 foreclosure sale. Specifically, Plaintiffs alleged that Defendants failed to comply with the procedural requirements of California Civil Code § 2923.5, and that Defendants failed to honor a provision in the Deed of Trust requiring them to provide Plaintiffs 30 days' notice prior to filing a Notice of Default.

On December 13, 2011, Judge Earl Maas granted Plaintiffs' unopposed request for a temporary restraining order, enjoining Defendants from proceeding with the scheduled foreclosure sale. (See Dkt. No. 6-3, Temporary Restraining Order dated Dec. 13, 2011.) In that same order, Judge Maas also scheduled a preliminary injunction hearing on February 10, 2012, required Plaintiffs to make mortgage payments in the amount of $7,500 per month for the TRO to remain in effect, and ordered that tax payment for the Property must remain current. (Id.)

On January 6, 2012, Defendants timely removed Plaintiffs' state court case pursuant to 28 U.S.C. § 1441(b). On February 28, 2012, Plaintiffs filed an ex parte application seeking a second TRO against the second scheduled foreclosure sale (now scheduled for March 12, 2012).

## II. DISCUSSION

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (a) he is likely to succeed on the merits; (b) he is likely to suffer irreparable

harm in the absence of preliminary relief; (c) the balance of equities tips in his favor; and (d) an injunction is in the public interest. Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008).

The Ninth Circuit has held that the "sliding scale" approach to preliminary injunctions survives Winter when applied as part of the four-element Winter test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135.

**a.  Likelihood of success on the merits**

In support of their ex parte application, Plaintiffs argue (a) that Defendants violated the procedural requirements of California Civil Code § 2923.5 during the foreclosure proceedings; and (b) that the Notice of Default is invalid because its signor, Defendant First American Trustee Servicing Solutions, LLC, did not have lawful authority to record and sign it. The Court addresses these arguments, as well as Plaintiffs' claim in their complaint that Defendants breached the 30-day notice requirement in the Deed of Trust. The Court does not consider Plaintiffs' arguments based on their claims of trespass and breach of the implied covenant of good faith and fair dealing.[1]

---

[1] On February 28, 2012, Plaintiffs filed a motion for leave to file a first amended complaint. (Dkt. No. 7.) This motion is set for hearing on April 6, 2012. Defendants' opposition to this motion is not due until March 23, 2012. In their proposed First Amended Complaint, Plaintiffs raise for the first time their claims of trespass and breach of the implied covenant of good faith and fair dealing. By raising these claims in support of their ex parte application for a TRO, Plaintiffs are asking the Court to resolve their motion for leave to file a first amended complaint roughly one month before the hearing date, and before Defendants have filed any opposition papers. The Court denies this implicit request.

But even if the Court were to consider Plaintiffs' arguments raised in their proposed first amended complaint, those arguments would not support Plaintiffs' request for a TRO. Plaintiffs' allegations of trespass, even if true, do not give rise to a claim for a TRO against the foreclosure sale, as the alleged trespasses are past wrongs that could be remedied at law. Plaintiffs' allegations of breach of the implied covenant of good faith and fair dealing are not likely to succeed, because Plaintiffs have not explained how Defendants' alleged actions, even if true, frustrated Plaintiffs' right to receive any benefits actually provided to them under

### i.     California Civil Code § 2923.5

Plaintiffs argue that Defendants' failure to comport with various procedural requirements in California Civil Code § 2923.5 ("Notice of default; filing") renders the Notice of Default "void and of no legal effect." (Cplt. ¶ 13.)  By its plain terms, § 2923.5 applies only to "mortgages or deeds of trust . . . that are secured by owner-occupied residential real property . . . ." Cal. Civ. Code § 2923.5(i). "'[O]wner-occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents." Id.

In their complaint, Plaintiffs claim that ¶ 6 of the Deed of Trust provides that "Borrower shall occupy, establish, and use the Property as Borrower's principal residence . . . ." (Cplt. ¶ 8.)  This claim ignores the "Second Home Rider" to the Deed of Trust that replaces ¶ 6 with language requiring that Plaintiffs "shall occupy, and shall only use, the Property as [their] *second home*." (See Dkt. No. 1-1 at 31 of 39, "Second Home Rider" to Deed of Trust, dated July 25, 2006 (attached as an exhibit to Plaintiffs' original complaint) (emphasis added).) This language undermines Plaintiff's claim that the Property is their "principal residence" as indicated in the loan documents.

### ii.    Validity of First American's Execution of Notice of Default

The Notice of Default, recorded on August 18, 2011, was recorded and signed by Defendant First American Trustee Servicing Solutions, LLC ("First American") acting as "either the original trustee, the duly appointed trustee, or . . . agent for the trustee or beneficiary under [the Deed of Trust.]" (Dkt. No. 8-1 at 28-29 of 38.)  Plaintiffs argue that First American "was not the trustee under the Deed of Trust and did not have the authority to execute or record the Notice of Default" at the time it was recorded. (Cplt. ¶ 12.) Plaintiffs claim that on August 18, 2011, the named trustee was Fidelity National Insurance Co. (See Dkt. No. 6 at 3), and that Defendants did not record a Substitution of Trustee naming First American as substituted trustee until August 26, 2011.  On this ground, Plaintiffs assert that First American "was not legally authorized to execute or record the Notice of Default" and

the terms of the Deed of Trust.

that the Notice of Default is therefore "void and of no legal effect." (Dkt. No. 6 at 8.)

Plaintiffs are not likely to succeed on this argument. Although it appears from the record that the Substitution of Trustee naming First American as trustee was signed on August 24, 2011 (see Dkt. No. 8-1, Substitution of Trustee, at 29 of 38 (signed August 24, 2011)), Plaintiffs fail to allege that First American was not acting "as agent for the trustee or beneficiary" when it recorded the Notice of Default on August 18, 2011. (See Dkt. No. 8-1, Notice of Default, at 29 of 38; see also Cal. Civ. Code § 2924(a)(1) ("The trustee, mortgagee, or beneficiary, *or any of their authorized agents* shall first file . . . a notice of default." (emphasis added)).) The Court draws the inference that First American was acting as agent for Wells Fargo when it signed and recorded the Notice of Default on August 18, 2011, as Wells Fargo signed the Substitution of Trustee a mere six days later. Moreover, the California foreclosure statutes expressly permit "substitution [to be] effected after a notice of default has been recorded but prior to the recording of the notice of sale . . . ." Cal. Civ. Code § 2934a(c). The first notice of sale in this case was recorded on November 22, 2011, well after the substitution of First American as Trustee. (See Dkt. No. 8-1 at 36 of 38.) Thus, Plaintiffs are not likely to succeed on the merits of their claim that First American could not properly record the Notice of Default.

### iii.   30-day Notice Requirement

Plaintiffs' complaint (though not their ex parte application for a TRO) alleges that Plaintiffs "never received a Thirty Day Notice prior to the filing of the notice of default" (Cplt. ¶ 11), as allegedly required under ¶ 22 of the Deed of Trust (Cplt. ¶ 9). Plaintiffs do not include a cause of action for breach of contract in their complaint, but rather list the alleged breach as one of several grounds supporting their second cause of action, entitled "Declaratory Relief." (Cplt. ¶ 24.)

Paragraph 22 states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the

> default; (c) *a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured*; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The Notice shall further inform Borrower of the right to reinstate after acceleration. . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

(Dkt. No. 8-1 at 17 of 38, Deed of Trust ¶ 22 (emphasis added).)

Paragraph 22 imposes limits on Defendants' contractual right to accelerate the Loan and sell the Property in the event of default. It states that only "if the default is not cured before the date specified in the notice" may the "Lender at its option . . . require immediate payment in full of all sums secured [and] invoke the power of sale and any other remedies permitted by Applicable Law." By recording the Notice of Default prior to providing a 30-day notice period, Defendants "invoke[d] . . . remedies permitted by Applicable Law" in a manner not consistent with the terms of the Deed of Trust. See Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc., 180 Cal. App. 4th 1090, 1097 (4th Dist. 2009) ("The rights and powers of trustees in nonjudicial foreclosure proceedings are 'strictly limited and defined by the contract of the parties and the statutes.'" (citation omitted)).

However, California courts have rejected claims of deficient notice where the borrower suffered no prejudice resulting from a procedural irregularity. See, e.g., Lehner v. United States, 685 F.2d 1187, 1190-91 (9th Cir. 1982) (upholding a sale where the borrower did not have any written notice because the borrowers actual notice negated any claim of prejudice); Knapp v. Doherty, 123 Cal. App. 4th 76, 94 (6th Dist. 2004) (premature notice of sale in violation of statute did not invalidate sale because borrower suffered no cognizable prejudice). Since Plaintiffs have not argued any prejudice resulting from the premature recording of the Notice of Default, they have not established likelihood of success on the merits. However, Plaintiffs have established that the Notice of Default was not recorded in a manner consistent with the requirements in the Deed of Trust, and have raised at least serious questions going to the merits of their allegations of a breach.

//

**b.      Balance of the equities**

Notwithstanding any technical defects in the foreclosure proceedings, the balance of equities does not tip sharply in favor of Plaintiffs in this case. The Notice of Default provides a three-month period before the trustee can record the Notice of Sale. (Dkt. No. 8-1 at 29 of 38.) During that period, Plaintiffs could return to good standing on the loan by paying the arrearage. See Cal. Civ. Code § 2924c. If Defendants had complied strictly with the requirements of ¶ 22 in the Deed of Trust, the 30-day notice period and the three-month period following the recording of the Deed of Trust would have provided Plaintiff with roughly four months--rather than the three months they were provided by the Notice of Default as actually recorded--to pay the arrearage on the Loan and return to good standing. The Court finds that the failure to provide the extra 30-day notice period as required under the Deed of Trust did not prejudice Plaintiffs.

Plaintiffs have not alleged any payments on their mortgage since August 2010. They have been on formal notice of their default and of the amount in arrears (which amount they do not contest) for nearly seven months, and they have not alleged a tender of that amount. Based on the record before the Court, it appears highly unlikely that Plaintiffs *could* pay the amount overdue on the Loan, as Plaintiffs appear to be experiencing extreme financial hardship.[2] The Court also notes that Plaintiffs have not resided at the Property (their second home) since at least "early to mid-2011" as a result of massive, uncompleted renovations,[3]

---

[2] In their complaint, Plaintiffs allege that they stopped payment on the Loan after August 2010 because they "suffered a serious decline in income and [were] struggling to pay outstanding debts." (Dkt. No. 1-1 at 4 of 39.) Plaintiff Lenn Haffeman stated in his declaration supporting the application for a TRO that "[w]e made all payments due on the Loan through approximately August 2010, when we began to experience financial hardship. Our income, which is largely derived from the sale of high-end real estate, was sharply reduced as a result of the Great Recession. Also, our reliance upon our cash holdings in a Colorado-based hedge fund[] turned out to be misplaced when this hedge fund was revealed to be a Ponzi Scheme. *We have exhausted our cash savings, such that we were unable to maintain the payments on the Loan, while also being able to cover basic living expenses at the same time.*" (Dkt. No. 6-2 at 1 of 4 (emphasis added).)

[3] Plaintiffs state that "[i]n early to mid-2011, . . . the main house located on the Property was being renovated, therefore [Plaintiffs] did not continuously reside at the Property." (Dkt. No. 6-2 at 2 of 4, Declaration of Lenn M. Haffeman.) Based on email correspondence

a fact that speaks both to their inability to tender the amount in default and to the absence of hardship they face as a result of the impending foreclosure sale.

Under the circumstances presented in this case, Plaintiffs' failure (and apparent inability) to tender the amount in arrears on the loan at any time since August 18, 2011, illustrates the uselessness of forestalling the foreclosure sale any further on the ground that Defendants did not provide a 30-day period within which Plaintiffs could have cured the default. See FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal. App. 3d 1018, 1022 (2d Dist. 1989) ("[I]f plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs."); Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117-118 (2d Dist. 1971) (refusing to set aside foreclosure sale, where borrower was "in substantial default in the performance of the obligation of her contract and [has] in no manner shown by the evidence any ability to presently relieve herself from such defaults[,]" because "*[e]quity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act*" (emphasis in original)).

Defendant Wells Fargo, on the other hand, has not collected mortgage payments on the Property for over a year and a half. Thus, the balance of the equities does not tip sharply in favor of Plaintiffs.

//
//
//
//
//
//
//

---

between counsel for the parties, appended to Plaintiffs' ex parte application, it appears that Plaintiffs were unable to afford completing the renovations, that completion of the renovations would cost at least $250,000, and that as of February 15, 2012, "the main house is not currently livable." (Dkt. No. 6-1 at 3 of 8.)

### III.  CONCLUSION

Since Plaintiffs have raised only "serious questions" as to the merits of their case, and they have failed to show that the balance of the equities tips sharply in their favor, Plaintiffs have failed to satisfy the requirements for injunctive relief.  See <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011).  Accordingly, the Court hereby **DENIES** Plaintiffs' ex parte application for a temporary restraining order.

**IT IS SO ORDERED.**

DATED: March 9, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court